Filed 3/25/24  P. v. Whitehurst CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>RICHARD WHITEHURST,<br><br>  Defendant and Appellant. | B327288<br><br>(Los Angeles County<br>Super. Ct. No. BA024364) |

APPEAL from an order of the Superior Court of Los Angeles County, Shellie L. Samuels, Judge.  Reversed and remanded with instructions.

Rudolph J. Alejo, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Zee Rodriguez and Yun K. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

In 1992, a jury convicted appellant Richard Whitehurst of three counts of first degree murder, two counts of second degree robbery, and one count of attempted willful, deliberate, and premeditated murder.  He now appeals from the denial of his petition for resentencing under Penal Code section 1172.6[1]  He contends the trial court erred by denying his petition at the prima facie stage of review because the jury instructions and findings upon which the court relied do not foreclose relief as a matter of law.  We agree.  We accordingly reverse and remand with directions to issue an order to show cause and proceed in accordance with section 1172.6.

<b>BACKRGOUND</b>

## I.    Factual Background

The underlying facts presented at trial are discussed in detail in this court's prior nonpublished opinion, *People v. Whitehurst* (Nov. 16, 1994, B071419).  We summarize them here to provide context for the trial court's ruling.  We otherwise do not rely on this factual background in resolving the issues presented in this appeal.  ( *See* § 1172.6, subd. (d)(3).)

The crimes at issue involved four victims and two separate incidents.  The first incident involved the June 21, 1989 robbery and murder of Timothy Ellerson and the attempted murder of Dwayne Haley.  On several occasions prior to that date, Haley and Ellerson had purchased drugs from appellant at Geraldine's, a nightclub appellant managed.  Codefendant Robert Crenshaw worked at the club as a security guard. On June 21, 1989, Haley and Ellerson arrived at Geraldine's intending to purchase drugs

---

[1]    All further statutory references are to the Penal Code unless otherwise indicated.

from appellant.  Appellant said they would have to go to the seller.  At appellant's suggestion, he and Ellerson left in appellant's white Nissan 300 ZX; Ellerson took with him $15,500 in a gym bag.  Haley remained at the club.

When Ellerson did not return, Haley attempted to page him. Shortly thereafter, Crenshaw entered the club and told Haley that "Tim [Ellerson] and Rich [Whitehurst] said for me to come and get you, bring you around the corner because things took longer than they thought."  Haley and Crenshaw left in Haley's car.  Crenshaw directed them to a residential area and told Haley to park in front of a particular house.  Crenshaw told Haley to wait and left the vehicle.  While he waited, Haley saw a white Nissan 300 ZX pass a number of times through a nearby intersection. Crenshaw returned, drew a gun, and "stuck it to the window" of Haley's car.

Haley sped off as Crenshaw fired several shots and hit him. The white Nissan cut in front of Haley and attempted to block his escape.  Haley saw that appellant was driving the Nissan.  Haley escaped and was later treated at the hospital for his wounds. Later that night, police found Ellerson's body lying in the street. He had been shot three times.  Police did not recover the gym bag.

Crenshaw testified at trial and denied shooting at Haley. He claimed he had never seen Haley before the prosecution of the case.  Appellant did not testify, but presented evidence to suggest that Ellerson had been shot by unrelated individuals who had been arrested on the night of the murder.

The second incident involved the murders of Tracy Bolton and Derrick Turner on August 13, 1990.  The bulk of the prosecution's evidence was provided by an accomplice, Melvin

3

Lester.  In early August 1990, Oakland drug dealers Bolton and Turner came to Los Angeles to buy cocaine.  They knew Lester from prior dealings; he brought the pair to Geraldine's and introduced them to appellant.  At that time, Bolton and Turner did not complete the purchase.

On August 13, 1990, Bolton and Turner returned to Los Angeles and again accompanied Lester to Geraldine's.  Appellant offered to arrange a transaction.  Later that evening, Crenshaw arrived at the club.  After the club had closed, Lester saw appellant and Dominique Titus, a second club security guard, force Bolton and Turner at gunpoint into the back of the club.  Lester recognized the gun as Crenshaw's .45 automatic.  Crenshaw told Lester not to say anything.

Appellant retrieved a gym bag Bolton and Turner had placed in the trunk of Lester's car and then signaled to Crenshaw that he had not found the object of his search.  After Lester heard someone being "roughed up" in the back of the club, Crenshaw emerged with bundles of money, said "there's more than that," and returned to the back of the club.  Appellant began to separate the bundles.  Shortly thereafter, Titus came out, displayed more bundles of money, and said they would have to tie up Bolton and Turner.

Later, Lester went to the back of the club and saw Turner and Bolton on the floor, bound and gagged.  Lester told Crenshaw that Bolton was having an asthma attack. Crenshaw replied, "So what. . . .  He's going to die anyway."  Bolton and Turner were then placed in the trunk of Crenshaw's car.  They were bound and gagged but still alive. Crenshaw drove away, followed by Titus in one car and appellant and Lester in appellant's car.  After the three cars stopped in a parking lot, Crenshaw removed

4

Bolton and Turner from his trunk and placed them on the ground. Appellant returned Crenshaw's .45 gun to him and said, "Hurry up and do it. Hurry up and get it over [*sic*] so we can get out of here." Appellant and Lester left in appellant's car, stopped at a nearby curb, and began to talk. Lester heard a shot and told appellant, who smiled, nodded, turned up the volume on the radio, and drove away. As they drove away, Lester heard more shots.

Police discovered the victims' bodies in the parking lot. Several days later, Lester told Crenshaw he thought Bolton and Turner might still be alive. Crenshaw replied, "I killed them mother-fuckers."

At trial, Crenshaw denied any involvement with the murders. Appellant did not testify but presented an alibi defense.

## II. Procedural History

### A. Conviction and Sentence

In 1992, an amended information charged appellant and Crenshaw with the robbery (§ 211) and murder (§ 187) of Timothy Ellerson, the robbery and murders of Tracy Bolton and Derrick Turner, and the attempted willful, deliberate, and premeditated murder of Dwayne Haley. The amended information further alleged multiple murder and robbery-murder special circumstances. (§ 190.2, subds. (a)(3), (a)(17).)

At the joint trial, the court instructed the jury on two theories of liability for the murders: willful, deliberate, and premeditated murder, using the then-current version of CALJIC No. 8.20; and first degree felony murder, using then-current versions of CALJIC No. 8.21 and 8.27. It also instructed the jury on conspiracy principles using then-current CALJIC Nos. 6.10.5

5

and 6.11, the latter of which included the natural and probable consequences doctrine. The court used then-current CALJIC No. 8.80 to instruct on the special circumstance allegation as to the three murders: "If you find beyond a reasonable doubt that the defendant was either the actual killer, a co-conspirator, or an aider and abettor, but you are unable to decide which, then you must also find beyond a reasonable doubt that the defendant with the intent to kill participated as a co-conspirator with or aided and abetted an actor in commission of the murder in the first degree, in order to find the special circumstance to be true. On the other hand, if you find beyond a reasonable doubt that the defendant was the actual killer, you need not find that the defendant intended to kill a human being in order to find the special circumstance to be true."

The jury found appellant guilty of all charges: three counts of first degree murder, two counts of second degree robbery, and one count of attempted willful, deliberate, and premeditated murder. The verdict forms did not specify the theory or theories on which the jury convicted him. The jury also found the special circumstances allegations true, again without clarifying the basis for its decision. After a penalty phase trial, the jury selected life imprisonment without the possibility of parole for the three murders.

On September 25, 1992, the court sentenced appellant to two consecutive terms of life imprisonment without the possibility of parole, and two concurrent terms of the same. The court imposed and stayed two midterm sentences of three years for the robberies pursuant to section 654. A different panel of this court affirmed appellant's convictions on direct appeal.

6

### B. Petition for Resentencing

On January 27, 2022, appellant filed a form petition for resentencing under former section 1170.95.[2]  He checked the boxes indicating that he was prosecuted for murder and attempted murder under felony murder or natural and probable consequences theories, he was convicted of murder, and could not now be convicted of that crime under the relevant amendments to the law.  He also checked the box requesting that the court appoint counsel to represent him.  The trial court appointed counsel for appellant.

The People filed a response, arguing that the jury's true finding on the robbery-murder special circumstances  precluded relief as a matter of law.  Specifically, the People contended that based on CALJIC No. 8.80, "the only way for the jury to find true any of the alleged special circumstances was to find unanimously either [appellant] was the actual killer or was an aider and abettor who acted with the intent to kill."

Appellant filed a reply.  He argued that the jury's true finding on the special circumstances allegations did not disqualify him from resentencing, as that finding was made prior to the Supreme Court decisions in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522 clarifying when a defendant acts as a major participant with reckless

---

[2]    Effective June 30, 2022, Penal Code section 1170.95 was renumbered section 1172.6, with no change in text.  (Stats. 2022, ch. 58, § 10.)

indifference to human life.[3]  He attached as exhibits copies of the relevant jury instructions from his trial.

At the December 1, 2022 hearing on the petition, the court noted that the parties had not provided transcripts of the trial and thus the court had to rely on the facts as laid out in the prior appellate opinion.  The court expressed uncertainty as to whether it could rely on the facts from a prior opinion.  Defense counsel objected that "at this stage of the proceedings the court is not to do any fact finding," and asserted that the court could only consider the prior appellate opinion for the procedural history of the case.

The People argued that in order to find the special circumstance allegation true, the jury must have found that appellant was the actual killer or had the intent to kill, and therefore appellant was not eligible for relief as a matter of law.  The court agreed, stating that "the finding necessary for the special circumstance would automatically make [appellant] ineligible for this type of hearing because they have to find intent to kill, and they obviously did."  The court accordingly denied the petition, finding that "the jury instruction is very clear he had to

---

[3]     Appellant did not raise below the argument regarding CALJIC No. 8.80 that he now makes on appeal.  He has therefore forfeited this argument.  (See *People v. Schell* (2022) 84 Cal.App.5th 437, 444.)  However, the Attorney General did not argue forfeiture.  Moreover, because the question whether appellant is ineligible for relief under section 1172.6 as a matter of law is a purely legal question, and "to avert any claim of inadequate assistance of counsel" (*People v. Watson* (2021) 64 Cal.App.5th 474, 483), we exercise our discretion to address his argument on the merits.

8

have had the intent, and I think I can say this based on the fact that it was clear that he had intent to kill based on the facts."

Appellant timely appealed.

## DISCUSSION

Appellant contends the trial court erred in denying his petition because he made a prima facie case for relief. He argues that CALJIC No. 8.80, the jury instruction on the robbery-murder special circumstance, was ambiguous as to whether he had to have the intent to kill if he acted as an aider and abettor to the murders. As such, he contends that the jury's true finding on the special circumstance did not render him ineligible for resentencing as a matter of law. Respondent does not dispute the ambiguity of the instruction. Instead, respondent argues the prosecutor's closing argument during trial explained that an intent to kill was required and therefore sufficiently supported the trial court's finding that appellant is ineligible for relief as a matter of law. We agree with appellant that the record of conviction does not establish that the jury necessarily found that he was the actual killer or had an intent to kill. As such, the trial court erred in denying his petition at the prima facie stage.

### I.   Legal Principles

Effective January 1, 2019, Senate Bill No. 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1.)

9

Senate Bill No. 775, effective January 1, 2022, modified the law, now codified at section 1172.6, to "expand the authorization to allow a person who was convicted of murder under any theory under which malice is imputed to a person based solely on that person's participation in a crime . . . to apply to have their sentence vacated and be resentenced." (Stats. 2021, ch. 551, § 1.)

If a petitioner seeking relief under section 1172.6 makes a prima facie showing that he or she is entitled to relief, the trial court is required to issue an order to show cause for an evidentiary hearing. (*People v. Hurtado* (2023) 89 Cal.App.5th 887, 891, citing § 1172.6, subd. (c).) In assessing eligibility at the prima facie stage, the court ""takes petitioner's factual allegations as true and makes a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved."" (*People v. Lewis* (2021) 11 Cal.5th 952, 971 (*Lewis*). If the petition is facially sufficient and the petitioner has requested counsel, the court must appoint counsel for him or her, obtain briefing, and determine if the petitioner has made a prima facie case for relief. (*Id.* at p. 963; § 1172.6, subds. (b)(3), (c).) "If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (§ 1172.6, subd. (c).) The court may not engage in factfinding involving the weighing of evidence or exercise of discretion at this stage, though it may make credibility determinations adverse to the petitioner if the record contains facts refuting the allegations of the petition. The court properly denies the petition if the petitioner is ineligible for relief as a matter of law. (See *Lewis, supra*, 11 Cal.5th at pp. 970–972.)

The bar for this prima facie showing was "'intentionally and correctly set very low.'" (*Id*. at p. 972.)

Where a trial court denies a section 1172.6 petition based on the failure to make a prima facie case for relief, our review is de novo. (*People v. Lopez* (2022) 78 Cal.App.5th 1, 14

## II. Analysis

The Supreme Court has held that a specific jury finding that a defendant had the intent to kill "is generally preclusive in section 1172.6 proceedings, i.e., it 'ordinarily establish[es] a defendant's ineligibility for resentencing under Senate Bill [No.] 1437 and thus preclude[s] the defendant from making a prima facie case for relief.'" (*People v. Curiel* (2023) 15 Cal.5th 433, 453–454, quoting *People v. Strong* (2022) 13 Cal.5th 698, 710 (*Strong*).) The trial court here denied appellant's petition on this basis, finding that the jury's true finding on the felony-murder special circumstance necessarily meant that the jury found appellant harbored an intent to kill. But appellant contends that the instruction given, CALJIC No. 8.80, was not preclusive because the instruction was ambiguous as to whether the jury had to find that an intent to kill.

In *People v. Letner and Tobin* (2010) 50 Cal.4th 99 (*Letner*), our Supreme Court agreed that CALJIC No. 8.80 was ambiguous. The court explained: "[T]he flaw in this instruction . . . is that it failed to instruct the jury explicitly that, under then existing law, an aider and abettor must have had the intent that the victim be killed in order for the special circumstance allegation to be true. [Citation.] The jury was told that if it determined one of the defendants was the actual killer, intent to kill was not required, and that if it could not decide whether one of the defendants was the actual killer or an aider and abettor, it must find intent to kill

11

in order to make a true finding.  The jury, however, was not informed what was required in the event the jury determined that a particular defendant was an aider and abettor.  The omission of this third alternative made the instruction ambiguous."  (*Letner*, *supra*, 50 Cal.4th at 180-181, fn. omitted.)

Thus, the trial court's finding below that the jury instructions clearly required an intent to kill was in error.[4] Based on the ambiguous instruction alone, we cannot conclude as a matter of law that the jury's special circumstance true findings were necessarily predicated on a finding appellant was an aider and abettor with an intent to kill the victims.  Notably, it was the prosecution's theory that Crenshaw, not appellant, was the actual killer of at least two of the victims, Bolton and Turner.  Thus, it is likely that the jury convicted appellant of their murders based on a finding that he was an aider or abettor or a co-conspirator and therefore potentially had to squarely contend with the ambiguity in CALJIC No. 8.80.

Respondent acknowledges the instructional ambiguity, but argues that the error was harmless.  In *Letner*, a direct appeal, the court found the instructional error harmless because the prosecutor correctly told the jury during closing argument that an intent to kill was required and also "argued exclusively that the evidence demonstrated that *both* defendants had the intent to kill" the victim.  (*Letner*, *supra*, 50 Cal.4th at 182.)  Thus, the court concluded, "based upon our review of the record, that there

---

[4]     We note that the trial court did not appear to consider *Letner* in reaching this conclusion, presumably because neither pay cited it below.

12

is no reasonable likelihood the jury misunderstood or misapplied this instruction." (*Ibid.*)

Applying this standard, respondent contends that the instructional ambiguity was harmless, because the prosecution argued exclusively that both appellant and Crenshaw intended to kill the victims. In his closing argument, the prosecutor told the jury that a true finding on the special circumstance allegation meant that "the nonshooter in these incidents also harbored an intent to kill. But we know. . . from the planned, premeditated nature of these crimes, that both of these defendants [Whitehurst and Crenshaw], they both had had [*sic*] intent to kill with each of these three victims."[5] However, the prosecutor also argued that the jury could find first degree murder by finding that appellant acted with the intent to kill under a felony-murder theory in the commission of the robberies, or as a co-conspirator under a natural and probable consequences theory.

We are not persuaded that the *Letner* court's analysis of instructional error harmlessness on direct appeal is applicable to the prima facie inquiry in the section 1172.6 context.[6] Instead, "[t]he ultimate question before us is whether "'the record,

---

[5] We grant respondent's unopposed request for judicial notice of the transcript of the prosecution's closing argument at appellant's trial.

[6] At least two published cases have applied the "no reasonable likelihood" standard in making the section 1172.6 prima facie determination, although neither case affirmed the denial of a petition based on the prosecution's closing arguments alone. (See *People v. Williams* (2022) 86 Cal.App.5th 1244, 1256 [finding no error based on analysis of jury instructions as a whole]; *People v. Ervin* (2021) 72 Cal.App.5th 90, 107 [reversing and remanding for evidentiary hearing].)

including the court's own documents, 'contain[s] facts refuting the allegations made in the [section 1172.6] petition.""" (*People v. Maldonado* (2023) 87 Cal.App.5th 1257, 1269, quoting *Lewis, supra*, 11 Cal.5th at p. 971.) Only "[i]f the petition and record in the case establish conclusively that the defendant is ineligible for relief" may the trial court dismiss the petition. (*Strong, supra*, 13 Cal.5th at p. 708.)

Bearing in mind the low bar for a petitioner at the prima face stage, we conclude that the prosecutor's closing arguments here were insufficient to *conclusively* establish appellant's ineligibility as a matter of law. Courts "'presume that jurors treat the court's instructions as a statement of the law by a judge, and the prosecutor's comments as words spoken by an advocate in an attempt to persuade.' (*People v. Clair* (1992) 2 Cal.4th 629, 663, fn. 8.) '[P]rosecutorial commentary should not be given undue weight in analyzing how a reasonable jury understood . . . instructions. Juries are warned in advance that counsel's remarks are mere argument, missteps can be challenged when they occur, and juries generally understand that counsel's assertions are the "statements of advocates." Thus, argument should "not be judged as having the same force as an instruction from the court."'" (*People v. Cortez* (2016) 63 Cal.4th 101, 131.)

Here, given the ambiguity of CALJIC 8.80, which none of the other instructions clarified, we cannot say that the prosecutor's closing arguments alone establish as a matter of law that the jury could not have convicted appellant for murder without finding an intent to kill. Accordingly, we must remand the case to the trial court to issue an order to show cause under section 1172.6, subdivision (c) and hold an evidentiary hearing pursuant to section 1172.6, subdivision (d)(3). At the evidentiary

14

hearing, the trial court will not be compelled to credit appellant's allegations. (See *Lewis, supra*, 11 Cal.5th at 971 [court should not reject petitioner's factual allegations on credibility grounds "'without first conducting an evidentiary hearing'"].) We express no opinion regarding appellant's ultimate entitlement to relief.

## DISPOSITION

The order denying appellant's section 1172.6 petition is reversed. On remand, the trial court is directed to issue an order to show cause and hold an evidentiary hearing to determine whether appellant is entitled to section 1172.6 relief.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

COLLINS, J.

We concur:

CURREY, P.J.

MORI, J.